# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **GENERAL DUKES,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 2:18-00546-N** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| ***Commissioner of Social Security*,** ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff General Dukes brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon consideration of the parties' briefs (Docs. 13, 14, 15) and those portions of the administrative record (Doc. 12) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

## I. *Procedural Background*

Dukes filed the subject application for a period of disability and DIB with the Social Security Administration ("SSA") on June 12, 2015. After it was initially

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

denied, Dukes requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held on June 20, 2017, and on December 21, 2017, the ALJ issued an unfavorable decision on Dukes's application, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* Doc. 12, PageID.54-74).

The Commissioner's decision on Dukes's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on October 30, 2018. (*See* Doc. 12, PageID.47-52). Dukes subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.     *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022,

1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

_____

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

*See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record.  In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence.  It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.  The review must take into account and evaluate the record as a whole.").[4]

---

[4] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court.  *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.

---

pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Dukes met the applicable insured status requirements through December 31, 2018, and that he had not engaged in substantial gainful activity since the alleged disability onset date of April 3, 2014. (Doc. 12, PageID.61).[7] At Step Two, the ALJ determined that Dukes had the following severe impairments: fibromyalgia, degenerative joint disease of the cervical spine, status-post fracture of the right knee, carpal tunnel syndrome, and history of a learning disability. (Doc. 12, PageID.61-63). At Step Three, the ALJ found that Dukes did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.63-64).

At Step Four,[8] the ALJ determined that Dukes had the residual functional

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv)

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a)[9] except [he] should not perform pushing/pulling movements with his upper extremities, bilaterally[;] should never use his upper extremities, bilaterally, for overhead reaching[;] should never perform work in and/or around dangerous hazards such as work around unprotected heights or with operation of moving machinery or motor vehicles for commercial use[;] should avoid all climbing of ladders/ropes/scaffolds[; and] would be limited to work requiring simple, routine, repetitive tasks." (Doc. 12, PageID.64-72).

Based on the RFC, the ALJ determined that Dukes was unable to perform any past relevant work. (Doc. 12, PageID.72). At Step Five, after considering the testimony of a vocational expert,[10] the ALJ found that a significant number of other

---

& (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations ... Each classification ... has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 404.1567.

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether

jobs existed in the national economy that Dukes could perform given his RFC, age, education, and work experience. (Doc. 12, PageID.72-73). Thus, the ALJ found that Dukes was not under a disability as defined by Social Security Act during the relevant adjudicatory period. (Doc. 12, PageID.74).

## IV.    *Analysis*

### A.    **Evidence as to Cognitive Functioning**

Dukes first claims that the ALJ reversibly erred by failing to fully and fairly develop the evidence regarding Dukes's claimed cognitive functioning.    The undersigned is not persuaded.

Dukes argues that the ALJ erred in denying his motion to obtain an IQ test. While Dukes is correct that the ALJ "has a basic duty to develop a full and fair record[, n]evertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). Moreover, "[t]he administrative law judge … is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269. Additionally, to meet the relevant Listing for "mental retardation" at Step Three, a claimant must have, *inter alia*, a "valid verbal, performance, or full scale IQ of 59," 20 C.F.R. pt. 404, subpart P, app. 1 § 12.05(B), and the ALJ is still required to compare the IQ test result with the other evidence of record. *See Popp v. Heckler*,

someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam) ("Listing 12.00B4 does not require the Secretary to make a finding of mental retardation based on the results of an IQ test alone. *See Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir.1984) ('The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental retardation based solely upon the results of a standardized intelligence test in its determination of mental retardation'). The listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded."); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 912–13 (11th Cir. 2015) (per curiam) (unpublished) ("The regulations provide that the results of standardized intelligence tests 'are only part of the overall assessment.' 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D6a. And while such test results are 'essential' for all claims of intellectual disability not covered by listing 12.05A, *id.* § 12.00D6b, the regulations 'do[ ] not require the ALJ to make a finding of [intellectual disability] based on the results of an IQ test alone,' *Popp*, 779 F.2d at 1499. Indeed, they require the ALJ to 'examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior.' *Id.* at 1500.").

Here, the ALJ denied Dukes's motion for an IQ test, finding that the "record contains adequate evidence as to [Dukes]'s intellectual capacity and adaptive function…" (Doc. 12, PageID.59). In so finding, the ALJ considered Dukes's

education records, his employment history, and his activities of daily living (*see* Doc. 12, PageID.58-59, 62) noting:

- A "demonstrated … history of responsible multiple decade employment in SVP 4 level work" in "sandblaster and painting roles," as well as participating in "carpentry" and "welding," all of which, the ALJ found, "require learning job duties and maintaining safety and alertness[;]"

- "standardized testing in school that shows a range of abilities, from low to high[,]" with "[t]he scoring [being] typical for learning disability, and the higher scores … not consistent with mental retardation[;]

- Dukes's reporting that he "can read and write[,] uses an email address[, and] was capable of managing his funds" when he was working, "as he was able to pay his bills and count change."

The ALJ sufficiently explained why the evidence of record demonstrated a level of adaptive functioning sufficient to overcome any presumption of mental deficit that an IQ might have otherwise established, and substantial evidence supports her decision. While Dukes takes issue with some of the ALJ's reasoning, the undersigned finds no error.

Dukes argues that the ALJ "misrepresented [Dukes's] standardized testing results" by referring only to scores that do "not compare the student's results with all of the other students, but only other students in his intellectual range." (Doc. 14, PageID.406). The ALJ, however, did not misrepresent those results; rather, Dukes simply asks the Court to second-guess the weight the ALJ assigned to them, which it may not do. *Winschel*, 631 F.3d at 1178. Moreover, it was not unreasonable for the ALJ to attach some significance to the fact that some of the scores indicated he was performing above other students in his intellectual range.

The vocational expert testified that Dukes's past work as a sandblaster and painter was "semi-skilled" work that "would require a significant learning curve…" (Doc. 12, PageID.59, 72). Dukes argues that the ALJ misrepresented this past work, claiming that Dukes only described himself as a "laborer" who "did not consider himself a painter or sandblaster operator[,]" and that the ALJ failed to elicit testimony from Dukes regarding his specific job duties. (Doc. 14, PageID.406). Not so. In the Work History Report he submitted to the SSA in support of his application, Dukes listed his past job title as "major labor" (Doc. 12, PageID.229) (as opposed to simply "laborer," as Dukes claims in his brief (*see* Doc. 14, PageID.406 (citing Doc. 12, PageID.229)); on the very next page of the Work History Report, where Dukes was asked to describe what he did "all day" at that job, the first two reported duties were "painting" and "sand blasting." (Doc. 12, PageID.230).[11] Therefore, the ALJ did not err in concluding that such duties constituted a substantial portion of his job as a laborer.[12]

---

[11] Dukes also appears to claim that the ALJ should not have given much credence to the Work History Report, or an accompanying Function Report, because those forms were filled out by another individual on Dukes's behalf. However, there is no indication that the preparer was doing anything other than providing information supplied by Dukes, and Dukes has cited no authority suggesting that a claimant's form should be considered suspect simply because another person assisted in filling it out.

[12] Dukes claims that the ALJ also mischaracterized Dukes's past work by claiming Dukes "reported he used complex tools," when he actually only reported that he used "machines, tools, or equipment[,]" without specifying whether they were complex. *Compare* (Doc. 12, PageID.58) *with* (Doc. 12, PageID.230). The undersigned finds any error in this regard to be minor and overall harmless, given the other evidence considered by the ALJ.

Dukes also take issue with the ALJ's finding that he had an impairment of "learning disability," claiming that his school records "do not indicate that he had been diagnosed with a learning disability[,]" and there is otherwise "no medical evidence of a

In sum, Dukes fails to show that the ALJ committed any reversible error.

## B.    New Evidence to the Appeals Council

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process, including before the Appeals Council.  The Appeals Council has the discretion not to review the ALJ's denial of benefits.  But the Appeals Council must consider new, material, and chronologically relevant

---

learning disability in the record." (Doc. 14, PageID.407).  True, but given that Dukes relied on those same school records to support his own claim of cognitive functioning impairment, this argument also highlights the fact that Dukes himself failed to present any medical evidence to support of that impairment, as was his burden to do.  Moreover, Dukes's application specifically alleged disability due to, *inter alia*, "learning disability." (*See* Doc. 12, PageID.114, 117).  Accordingly, the undersigned will not fault the ALJ for giving Dukes the benefit of the doubt by inferring some mental impairment from his school records despite them not containing medical diagnoses.

For several reasons, the undersigned is not persuaded that *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988) (per curiam), "required" the ALJ here "to obtain the opinion of a qualified psychologist[,]" as Duke claims. (Doc. 14, PageID.408-409).  *McCall* relied on the version of 42 U.S.C. § 421(h) effective in 1984, which it read to "specifically provide[] that 'in any case where there is evidence which indicates the existence of a mental impairment' the Secretary may determine that the claimant is not under a disability 'only if the Secretary has made every reasonable effort' to obtain the opinion of 'a qualified psychiatrist or psychologist.' " 846 F.2d at 1320.  First, *McCall*'s reading of § 421(h) is likely dicta, as the panel had already found other reversible error and was simply noting that, on remand, "the applicability of section 421(h) must be carefully considered[,]" without expressly holding whether reversible error was committed on this point as well.  *Id.*  Second, the current version of § 421(h) only requires that "a qualified psychiatrist or psychologist … complete[] the medical portion of the case review and any applicable residual functional capacity assessment[.]"  42 U.S.C. § 421(h)(1).  It says nothing about requiring the completion of an IQ test.  Third, the current version of § 421(h) makes clear that its requirements only apply to initial decisions on disability applications, not reviews of initial denials by ALJs or the Appeals Council.  Finally, in *McCall*, there was record medical evidence from the "plaintiff's physicians … suggest[ing] that she might be suffering from a psychological condition." 846 F.2d at 1320.  As Dukes admits, his school records do not contain any medical evidence of a mental impairment, and he has pointed to no other record evidence suggesting as much.

Any other arguments not expressly addressed herein that Dukes has raised in support of his claim of reversible error by the ALJ do not warrant relief and are rejected without further discussion.

evidence that the claimant submits." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (citations and quotations omitted). "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to … *de novo* review." *Id.* at 1321 (quotation omitted). "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321.

Dukes presented new evidence to the Appeals Council when requesting review of the ALJ's decision, which included a "medical source statement from Bruce Taylor, M.D., dated January 5, 2018…" (Doc. 12, PageID.48). The Appeals Council found that this "additional evidence does not relate to the period at issue[; t]herefore, it does not affect the decision about whether [Dukes] w[as] disabled beginning on or before December 21, 2017[,]" the date of the ALJ's decision. (*Id.*).[13] Dukes argues that the Appeals Council erred in finding Dr. Taylor's medical source statement to be not chronologically relevant. The undersigned disagrees.

---

[13] Dukes incorrectly reads the Appeals Council's decision as "refus[ing] to consider Dr. Taylor's opinion for the sole reason that it was dated after the date of the ALJ's decision." (Doc. 14, PageID.409). The Eleventh Circuit has repeatedly held that nearly identical statements by the Appeals Council are sufficient explanation of finding that new evidence is not chronologically relevant. *See Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 227 (11th Cir. 2019) (per curiam) (unpublished) ("Hand contends that the Appeals Council erred in failing to consider new treatment records solely because they were dated after the date of the ALJ's decision … [T]he Appeals Council did not legally err. The Appeals Council stated that the new medical records 'd[id] not relate to the period at issue' and 'd[id] not affect the decision about whether [Hand was] disabled beginning on or before June 20, 2016.' In *Hargress v. Social Security Administration, Commissioner*, we found that nearly identical statements by the Appeals Council showed that 'the Appeals Council declined to consider these new medical records because they were not chronologically relevant.' 883 F.3d 1302, 1309 (11th Cir. 2018). We reach the same conclusion here. And '[t]he Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually.' *Id.*").

New evidence is "chronologically relevant" if it "relates to the period on or before the date of the hearing decision…" 20 C.F.R. § 404.970(a)(5). Even "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Washington*, 806 F.3d at 1322.

> In <u>Washington</u>, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. [806 F.3d] at 1319-20. Th[e Eleventh Circuit] concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case").[14]

*Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (per curiam). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 940 (11th Cir. 2017) (per curiam) (unpublished) ("Here, we conclude that the opinions contained in Dr. Wilson's materials are chronologically relevant even though Dr. Wilson examined Hunter four months after the ALJ's decision. As in *Washington*, Dr. Wilson reviewed Hunter's medical records from the period before the ALJ's decision in preparing the evaluation. He also considered Hunter's statements about

---

[14] Courts "review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam). Therefore, evidence that an impairment has worsened after the date of the ALJ's unfavorable decision is not relevant to review of that decision. *See id.* ("The ALJ's decision in this case was rendered on March 28, 1995. While Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.").

that same period, including her history of panic attacks. And the evaluation here was conducted closer in time to the ALJ's decision than the evaluation in *Washington*."). On the other hand, in *Hargress*, the Eleventh Circuit held that the Appeals Council properly found a medical opinion was not chronologically relevant because (1) "nothing in the form or any other documents indicated that [the physician] evaluated [the claimant]'s past medical records when forming that opinion[,]" and (2) the physician did not begin treating the claimant until after the date of the ALJ's unfavorable decision. *Id.* at 1310. *See also Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 712 (11th Cir. 2018) (per curiam) (unpublished) ("Dr. Rodolfo Reni's opinion in the 'supplemental mental impairment questionnaire' is not chronologically relevant, as nothing in the record indicates that: (1) Dr. Reni relied on Lindsey's prior medical records; or (2) Dr. Reni treated Lindsey during the relevant period." (citing *Hargress*, 883 F.3d at 1309-10)).

The Commissioner is correct that the January 5, 2018 medical source statement did not expressly indicate that Dr. Taylor had relied on Dukes's prior medical records when forming his opinions. (*See* Doc. 12, PageID.89-90). However, unlike the physicians in *Hargress* and *Lindsey*, Dr. Taylor had treated Dukes since well before the ALJ's decision, and his treatment records were extensively considered by the ALJ. Moreover, compared to the opinions at issue in *Washington* and *Hunter*, which were based on evaluations occurring approximately 7 months and 4 months, respectively, after the ALJ's decision, *see* 806 F.3d at 1319; 705 F. App'x at 939, Dr. Taylor's opinion was dated only 15 days after the ALJ's decision,

and the record indicates Dukes's representative requested a medical opinion from Dr. Taylor at least 3 times prior to the date of the ALJ's decision, with the first request dated May 10, 2017. (*See* Doc. 12, PageID.82-84).[15]  In light of this record, and given that the Commissioner generally gives "more weight to medical opinions from … treating sources" because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimants'] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[,]"  20 C.F.R. § 404.1527(c)(2),[16] Dr. Taylor's January 5, 2018 opinion was presumptively based on his treatment of Dukes occurring prior to the ALJ's decision; the Commissioner has cited no evidence to the contrary. Accordingly, the Appeals Council was incorrect that Dr. Taylor's opinion was not chronologically relevant.

Nevertheless, the Appeals Council still properly declined to consider Dr. Taylor's opinion because it was not "material" – that is, "there is no reasonable possibility that the new evidence would change the administrative result."

---

[15] At the June 20, 2017 ALJ hearing, Dukes's representative told the ALJ that "he anticipated a Medical Source Opinion from Dr. Taylor to be forthcoming after the hearing[,]" though of course "none was ever submitted" before the ALJ's decision.  (Doc. 12, PageID.71).

[16] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions.  However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Dukes's present application.  *See* 20 C.F.R. § 404.1520c.

*Hargress*, 883 F.3d at 1310.[17]  "A treating physician's medical opinion must be given substantial or considerable weight unless good cause is shown to give it less weight … Good cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Hargress*, 883 F.3d at 1305 (quotation marks omitted).  Here, Dr. Taylor's opinion was given on a check- or circle-the-answer form and did not provide any detailed reasoning to support its conclusions.  Moreover, the extreme limitations assigned in Dr. Taylor's opinion were not supported by his treatment notes, nor were they bolstered by the other evidence of record.  As the ALJ noted, Dr. Taylor's treatment notes often "lacked clinical evidence to support the allegations made[,]" and that his exams of Dukes "were generally normal in spite of containing vague diagnoses of pain and arthritis…" (Doc. 12, PageID.62).  For instance, at a March 31, 2015 examination, Dr. Taylor noted that that Dukes appeared "in no acute distress" with a "normal and appropriate" affect, and that Dr. Taylor did not otherwise "report any signs of pain symptoms during the examination[,]" which the ALJ found "not consistent with level 10 pain" Dukes self-reported at the examination.  (Doc. 12, PageID.69).  At a March 2017 examination, Dr. Taylor again noted that, while

---

[17] The Eleventh Circuit has repeatedly found it appropriate to consider whether new evidence satisfied elements of the "new, material, and chronologically relevant standard" that the Appeals Council did not expressly address.  *See Washington*, 806 F.3d at 1321-22 (considering the Commissioner's argument on appeal that the new evidence was also not material, even though the Appeals Council had only found it to be not chronologically relevant); *Hargress*, 883 F.3d at 1310 (after affirming the Appeals Council's finding that the new evidence was not chronologically relevant, making an alternative finding that the new evidence was also not material).

Dukes had "right shoulder pain worse with range of motion and lifting[,]" he also appeared to be "in no acute distress, with supple neck without significant lymphadenopathy or thyromegaly, normal and appropriate affect, and extremities without cyanosis, or edema." (Doc. 12, PageID.70). Though Dukes testified that exercising "hurts badly[,]" (Doc. 12, PageID.68), the ALJ correctly noted that Dr. Taylor's medical records repeatedly "encourage [Dukes] to keep exercising." (Doc. 25, PageID.71). Similar mild findings were noted by the ALJ in the treatment records of Dr. Richard Harris. (*See* Doc. 12, PageID.62, 69, 71).

In light of the conclusory nature of, and lack of evidentiary support for, Dr. Taylor's opinion, and the fact that the ALJ had already limited Dukes to a reduced range of sedentary work, the lowest exertional classification under the SSA regulations, there is no reasonable possibility that the ALJ would have given Dr. Taylor's opinion substantial or considerable, much less controlling weight, or would have otherwise reached a different result after considering it.[18]

Dukes has failed to convince the Court of any reversible error by either the

---

[18] *Compare Hargress*, 883 F.3d at 1310 (finding the new medical opinion submitted to the Appeals Council "would not have changed the administrative result" because it contradicted the physician's other records and "was inconsistent with medical records created during the relevant time period and submitted to the ALJ"), *with Washington*, 806 F.3d at 1322 ("[T]here is a reasonable possibility that Dr. Wilson's opinions could establish that Mr. Washington had 'an impairment[ ] that meets or equals' listing 12.04 because he experienced at least marked difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace … The Commissioner also asserts that Dr. Wilson's opinions are 'wholly inconsistent' with treatment notes from CED Mental Health Center, where Mr. Washington received mental health treatment, showing that he exhibited normal behavior and a willingness to learn … But the treatment notes reflect that Mr. Washington reported regularly experiencing hallucinations, hearing voices, having difficulty concentrating, being easily distracted, and struggling with anger. These records are consistent with and, in fact, support Dr. Wilson's opinions.").

ALJ or the Appeals Council. Accordingly, the Court finds that the Commissioner's final decision denying Dukes's application is due to be **AFFIRMED**.

## V.     *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Dukes's June 12, 2015 application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 3rd day of March 2020.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**